106   47
106   59

JACKSON v. BRITISH AMERICA ASSURANCE CO.

1. INSURANCE POLICY — CONSTRUCTION — USE OF RIDERS—INCONSISTENT PROVISIONS.

     All part of an insurance policy will be harmonized and given effect if possible, but, where the body of the policy and the riders attached thereto are irreconcilable, the latter will control.

2. FIRE INSURANCE—USE OF MARINE POLICY—CONFLICTING PRO-
VISIONS—LOSS OF VESSEL WHILE ENGAGED IN NAVIGATION.

Defendant insured a vessel against loss by fire from December
4, 1893, to May 1, 1894. The policy, which was written upon
a marine insurance blank, contained a warranty by the in-
sured that the vessel should be navigated between April 1st
and November 30th only, and from the last-mentioned date
to April 1st next ensuing should be "laid up and safely
moored." A rider was attached more specifically assuming
to insure "the steamer B., laid up and properly moored" in
a certain harbor, and giving permission to do painting, to
make necessary alterations and repairs, to fit out in the
spring, and to "move from dock to dock for the purpose of
loading and unloading cargo." Another rider provided:
"This policy covers against fire only, on the terms and con-
ditions of the standard form fire policy of the State of New
York, and anything in this policy conflicting therewith is
hereby waived." By the "standard form fire policy" men-
tioned in the rider, property was insured "while located
and contained" as described therein, and it became void if
mechanics should be employed in repairing for more than
15 days. The boat burned at a distance from the harbor on
April 16, 1894, while engaged in navigation. *Held* (GRANT,
J., dissenting), that defendant was liable for the loss, the
contract being construed as follows:

(1) While the insurance was issued according to the terms
of the standard policy, and the insured could not insist on
any provision necessarily conflicting therewith, the clause
permitting navigation after April 1st was not of that char-
acter.

(2) The term "laid up and properly moored," and the clause
permitting the vessel to move from dock to dock, contained
in the first rider, did not indicate an intention to limit the
insurance to such time as the boat should remain in the
specified harbor, but were consistent with the navigation
clause in the marine policy.

(3) The provision as to repairs was necessary to avoid the
effect of the prohibitive clause in the standard policy.

3. SAME—CONSTRUCTION OF POLICY BY INSURED.

The fact that after the fire, upon defendant's repudiating lia-
bility, the insured claimed that he had the right to navigate
under the provision permitting the vessel to move from dock
to dock for the purpose of loading and unloading cargo, can-
not alter the construction to be given to the policy.

4. FIRE INSURANCE—LOSS OF VESSEL—DAMAGES—EVIDENCE.

Under a provision in a fire policy upon a vessel that the loss or damage for which the insurer shall be liable shall in no event exceed what it would cost the insured to repair or replace the same with material of like kind and quality, the insured cannot, in a suit on the policy, be required to prove the exact extent of the damage, where the boat sank before being entirely consumed.

5. SAME.

In an action on a fire-insurance policy for the loss of a vessel which sank while burning, a witness who admits that he cannot estimate the cost of repair may nevertheless testify, if otherwise competent, that in his opinion, apart from that question, the boat is a total loss.

Error to Bay; Maxwell, J. Submitted June 5, 1895. Decided July 2, 1895.

*Assumpsit* by Gurdon K. Jackson, trustee, against the British America Assurance Company on a fire insurance policy. From a judgment for plaintiff, defendant brings error. Affirmed.

*Shaw & Wright* (*H. D. Goulder* and *George Clinton*, of counsel), for appellant.

*T. A. E. & J. C. Weadock* (*T. E. Tarsney*, of counsel), for appellee.

HOOKER, J. The plaintiff's vessel having been burned in Detroit river, while on a voyage from Bay City to Cleveland, an action was brought and judgment obtained by him upon a policy of insurance, and defendant has appealed.

The first and most important question raised by the record is whether the policy covered the vessel after leaving Bay City, and this depends upon a construction of the policy, which consists of the ordinary marine policy, with certain riders attached. It is conceded to indemnify against loss by fire only. Defendant claims that it was winter insurance, and covered the property only while the

vessel was in the harbor of Bay City; while the plaintiff asserts that it was a fire policy, covering the vessel from the 4th of December to the 1st of May, and that by the express terms of the policy she might navigate the lakes and Detroit river after April 1st. As stated, the policy was written upon a blank marine policy, which, if not qualified, would have insured the vessel against the other usual risks of navigation. It provided as follows:

"The British America Assurance Company    *    *    * does make insurance, and cause $5,000 to be insured, upon the body, tackle, apparel, and other furniture of the steamer called the 'Burlington,' from noon of the 4th day of December, 1893 (the said vessel being warranted by the insured to be then in safety), to noon of the 1st day of May, 1894, unless sooner terminated or made void by conditions hereafter expressed. Warranted by the insured to be employed exclusively in the freighting or passenger business, or both, and not to carry quicklime in the lower hold, and to navigate only the waters, bays, harbors, rivers, canals, and other tributaries of Lakes Superior, Michigan, Huron, St. Clair, Erie, and Ontario, and River St. Lawrence to Quebec, usually navigated by vessels of her class, during the portion of the life of this policy between noon of April 1st and noon of November 30th;    *    *    * and between noon of November 30th and noon of April 1st ensuing, said vessel shall be laid up and safely moored, satisfactorily to this company."

It was stamped: "This is a fire policy only."

If this were the only provision upon the subject, it is plain that plaintiff's contention that he had a right to navigate the vessel after April 1st without affecting his insurance is correct; but upon defendant's behalf it is contended that the riders and the circumstances under which the policy was obtained, and plaintiff's correspondence since the loss, exclude the plaintiff's construction, and show that it was the intention of the parties that the policy should be limited to such time as the vessel should remain in the harbor where she then was.

We will first consider the effect of the riders, in and of themselves. It is elementary that all parts of the policy

are to be harmonized and given effect, if it can be consistently done, and that, unless the riders are irreconcilable with the printed clause quoted, such clause must stand.   If they are inconsistent and irreconcilable, the riders must control.   The first rider upon the policy was as follows:

"On the hull, and on the engines, boilers, machinery, tackle, small boats, apparel, and furniture, belonging to and while on board of the steamer Burlington, laid up and properly moored in the harbor of Bay City, Mich. Permission is hereby given to do painting, and to make necessary alterations and repairs, and to fit out in the spring, and to move from dock to dock for the purpose of loading and unloading cargo."

Another rider was attached, reading as follows:

"This policy covers against fire only, on the terms and conditions of the standard form fire policy of the State of New York, and anything in this policy conflicting therewith is hereby waived."

The significant provisions of these riders, and those alleged to affect the question under discussion, are:

1. The language, "steamer Burlington, laid up and properly moored in the harbor of Bay City, Mich."
2. "Permission to do painting, and to make necessary alterations and repairs, and to fit out in the spring."
3. The privilege "of moving from dock to dock for the purpose of loading and unloading cargo."
4. The exclusion of all risks but fire.
5. The limitation to the terms of the standard form policy.
6. The waiver of provisions of the policy written, so far as they conflicted with the standard policy.

The fact that the first rider describes the property insured differently from the body of the policy has no especial significance.   It is somewhat more specific in articles mentioned; it may be doubtful whether it is more comprehensive.

The provisions numbered 4 and 5 clearly limit the risk to losses by fire.   They are irreconcilable with the pro-

visions of the marine policy as to other risks, and must govern in that respect, and plaintiff does not question this.

There is more question over the effect of the limitation to the terms of the standard form policy. This standard form policy referred to appears to be the "standard fire insurance policy of New York," and a copy is included in the record. It is said to be identical with the Michigan form. Counsel for the defendant claim that this rider gives the same effect to the policy as though written upon a standard form blank, and that in such blank there is no provision for navigation during certain portions of the year, but, on the contrary, the printed part of the standard policy uses the following language, viz.: "To the following described property, while located and contained as described herein." It is said that this provision should be substituted for the other, and if that be done there is nothing to indicate that the vessel might leave the place where she was moored, except to go from dock to dock in that harbor for the purpose of unloading and loading cargo.

These riders, like the policy, were signed by the underwriter, and we may dismiss the provision in relation to the waiver of inconsistent provisions by saying that it was the waiver of the company, and not of the plaintiff, made for the benefit of the plaintiff, and not the defendant. It was doubtless designed to cover the various provisions pertinent to marine risks, but which had no application to a purely fire risk. On the part of the plaintiff, no express waiver was necessary, for, by accepting this policy, he agreed to take insurance according to the terms of the standard policy, and cannot insist on anything in the policy taken that is *necessarily* in conflict with it. There is, therefore, no especial significance to the waiver, unless its language implies that the provisions of the marine policy apply where they are *not inconsistent* with the standard policy.

Had the standard policy blank been used, and the

clause quoted from the same been followed by the provision in relation to navigation after the 1st of April, it would have been a valid policy, and would have covered the property while in other waters than the harbor of Bay City. There is nothing inconsistent with the standard policy, or contrary to the law, in such a provision. Who can doubt that such a provision in a policy covering a threshing machine, a circus outfit, or a steam vessel would be efficacious? Indeed, the mere issuance of a policy upon property which, from its nature and use, is not adapted to its remaining in a given place, has been held to constitute insurance against its destruction while abroad. Especially has this doctrine been applied to livery stock, farmers' property, and in one instance to a lady's dolman while in the hands of a furrier for repair. See May, Ins. §§ 401*a*-401*c*; *Benton* v. *Insurance Co.*, 102 Mich. 281, 26 L. R. A. 241, and note. There is no necessary conflict between such provisions, and, had this clause providing for navigation been printed upon the rider, no dispute could arise over it.

This brings us to the consideration of the first provision. It is urged that it would have been easy for the underwriter to limit the insurance upon the Burlington while laid up and moored, etc., and that the omission of the word "while" indicates the intention to limit her to that place during the period of insurance, an inference which is said to be intensified by the third provision, as to moving from dock to dock. On the other hand, plaintiff suggests that the place of mooring was descriptive merely. The trouble with the defendant's claim about this is that it nullifies the provision regarding navigation, which we have shown is not inconsistent with the standard policy. It seems to us that the language may not only be reconciled with the plaintiff's claim, but that the words had a meaning and purpose consistent with the navigation clause. If it be conceded that the general terms of the standard fire policy apply, these two riders

become necessary, or, if not indispensable, at least useful to set at rest possible questions that might arise. The evidence shows that the underwriter did not care to take this risk. It was represented to him that the vessel was in a safe place, properly moored in Bay City harbor, and the rider stated that she was there. Under the standard policy alone, this would have been nothing unusual, nor does it seem to us any more so under the clause quoted from the marine policy, which requires the vessel to be laid up and moored satisfactorily to the underwriter, if it was desired to indicate a place of mooring. Again, under the marine policy clause, there is nothing to indicate that the vessel might move from dock to dock previous to the 1st of April, and if the plaintiff desired to unload after obtaining the policy, or load in the spring before April 1st, it was prudent to have the clause inserted. We have little doubt that it was inserted at his instance, and it was as consistent with an intention to start upon a voyage April 1st under the clause in the marine policy as May 1st upon the defendant's theory. The provision as to repairs was made necessary by reason of the provision relating to repairs in the standard policy. There is evidence tending to show that, under a strictly marine policy, repairs, etc., might be made during the winter, but the standard policy provides that the same shall become void if mechanics are employed in building, altering, or repairing for more than 15 days. This provision is done away with by the rider.

This leaves only the telegram from the plaintiff to be discussed, upon this branch of the case. After the fire, the plaintiff furnished proofs of loss, and the underwriter's agent wrote as follows, viz.:

"We have no insurance on steamer Burlington burned in Detroit river. See your policy, which insures Burlington *while* laid up and safely moored in harbor of Bay City, Mich."

To this the plaintiff replied by telegram as follows:

"Burlington was moored safely at dock when you

wrote insurance, but you gave permission to fit out in the spring, and to move from dock to dock for the purpose of loading and unloading cargo. Look at your contract."

It is argued from this correspondence that the plaintiff sought to maintain that he was within the contract, and that the vessel had the right to go from Bay City to Cleveland to *load and unload cargo,* thereby implying that he recognized the fact that she had not the right to navigate unless under that provision. This language justifies both of these inferences, but this alone is not, in our opinion, sufficient to change the construction to be given the policy.

We are therefore satisfied that each of the provisions in the rider had a specific purpose, and that such purposes were entirely consistent with the express provision in the marine policy, providing for navigation after April 1st, and therefore that the policy covered the vessel at the time of the fire. We have, then, a fire risk simply, under the standard policy, upon a vessel in Detroit river.

Counsel for the defendant assert that there was not sufficient proof to enable the court to determine the question of damages. The following provision is relied on, viz.:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

It is contended that, as the insured would not be entitled to recover more than the cost of repairing or replacing the property damaged with material of like kind and quality, it was incumbent upon the plaintiff to prove what that cost would be. The plaintiff's witnesses testified regarding the fire, but no one seems to have been able to give an estimate of the extent of the burning,

except in a general way. They testify that the cabin burned, and the deck was burned through, but do not know how much the hold was injured. She was laden with lumber, and there was no means of telling accurately. When she sunk, she was thought to have broken in two, and, although a diver examined her, he was unable to tell definitely the extent of the injury. We think there was evidence to be considered upon this subject, and that a plaintiff cannot be required to make a minute examination during a conflagration, or to go to the bottom of the lake or sea to estimate the cost of repair of a vessel which sunk before she was entirely consumed. Defendant's claim, if the law, would render it impossible for a plaintiff to recover upon a purely fire policy, where the vessel sunk beyond the reach of divers. Even in shallow water, ship-building and diving are frequently separate callings, and we cannot suppose it practicable to always find a diver qualified to estimate the repairs required, if he should be able to ascertain what repairs would be necessary when at the bottom of the sea or lake. No authorities are cited in support of the defendant's claim, and we think none can be found which hold to so strict a rule as is here invoked.

The court found that "the vessel was practically destroyed, so much so as to be a total loss." It is urged that "the only evidence in the case which can in any degree support a finding of a total loss was the testimony of one Quinn, and was improperly admitted, against objection and exception." Quinn was the diver. He spent about three hours examining the vessel, and, as it happens, was a ship carpenter by trade. He said that he examined her thoroughly from where she started to burn. After describing how and where she was burned, he said: "She was in pretty bad shape." Then followed the question:

"From your experience and knowledge of vessels, and your personal observation of this one, to what extent would you say she was injured by the fire?

"*A*.  I should say she is a total loss, so far as any use in rebuilding is concerned."

He said she could be raised, but might come up in pieces, and the job might perhaps be done for $2,000. He did not know whether she was in shape to utilize when raised, but apparently thought it improbable. He could not estimate the cost of repair. After cross-examination, he was asked the following question upon redirect:

"*Q*.  Is it your judgment, taking into consideration the condition in which you found the boat, and the necessary cost of raising her, independent of the cost of rebuild or repair, that the boat, in her present condition, is a total loss?

"*A*.  Yes, sir."

This was the answer excepted to. The objection was that the witness did not regard himself competent to estimate the cost of repairs. As will be seen, the cost of repairs was eliminated from the question as originally asked. We think that the court was not in error in permitting the witness to answer.

Upon the general question, whether there was proof that the loss was total, we think that there was evidence tending to show it, and it follows that it was for the circuit court to weigh, and we cannot review it.

We discover no error in the record, and the judgment will be affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred with HOOKER, J.

GRANT, J. (*dissenting*).  I cannot concur in the construction placed by my brethren upon the contract of insurance upon which the plaintiff seeks to recover. It seems to me entirely clear that this was a contract for what is known as "winter insurance," and covered the property insured only when the boat was "laid up and properly moored in the harbor of Bay City." This construction follows from the further language of the contract:

"Permission is hereby given to do painting, and to make necessary alterations and repairs, and to fit out in the spring, and to move from dock to dock for the purpose of loading and unloading cargo."

No such language would be appropriate or necessary to cover a boat and its contents while engaged in navigation. There could have been no object in describing the "steamer Burlington, laid up and properly moored in the harbor of Bay City," except it was to fix the *locus in quo* during the life of the policy. If it were the intention to insure the boat under all circumstances, it would only have been necessary to describe the property as the steamer Burlington and its contents. That the plaintiff so understood the contract is evident from his telegram to the defendant:

"Burlington was moored safely at dock when you wrote insurance, but you gave permission to fit out in the spring, and to move from dock to dock for the purpose of loading and unloading cargo. Look at your contract."

It thus appears that the plaintiff recognized the contract as one for winter insurance only, and sought to maintain its validity by interpreting the permission to move from dock to dock to apply to the boat when engaged in navigation. I do not think that courts should place a construction upon a contract different from that which the parties themselves have placed upon it, in a case where it is susceptible of two constructions.

I think the judgment should be reversed, and no new trial ordered.