CHRYSLER CORPORATION *v.* HARDWICK.

1. INSURANCE—GROUP POLICY—APPLICATION OF EMPLOYEE AS PART OF CONTRACT—BENEFICIARIES.

An employee's application for insurance under a group policy is a part of the group insurance contract and of value in determining the beneficiary.

2. SAME—GROUP POLICY—CERTIFICATE—CONTRACTS.

The certificate of insurance issued under a group policy is no part of the insurance contract and cannot be relied upon as establishing any contractual rights, the entire contract consisting of the application by the employer, the group policy issued, and the applications of the individual employees (3 Comp. Laws 1929, § 12435).

3. SAME—CONTRACTS—STATUTES.

Insurance contracts are subject to statutory regulations and provisions of the statutes must be read into the contracts.

4. SAME—GROUP POLICY—DESIGNATION OF BENEFICIARY—WIFE.

In determining the beneficiary under a group policy, employee's designation of named beneficiary as "wife" is in no way controlling as it is descriptive only.

5. SAME—GROUP POLICY—BENEFICIARIES—EVIDENCE—FORMER WIFE —BOARDING HOUSE KEEPER.

In controversy between woman who was deceased employee's former wife but from whom he had been divorced approximately 13 years before his death and rooming house keeper in whose house deceased had lived most of the last 8 years before his death, whose first names were the same as that designated in deceased's application for group insurance, testimony of deceased fellow employee and friend showing that deceased was primarily concerned in having his employer believe that he was married and that he designated latter defendant as his wife in naming beneficiary *held*, sufficient to justify finding that rooming house keeper was the beneficiary.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 15, 1941. (Docket No. 51, Calendar No. 41,736.) Decided December 2, 1941.

Bill of interpleader by Chrysler Corporation against Daisy E. Hardwick, also known as Daisy Hannah, and Daisy L. Hannah to determine the beneficiary of a group insurance policy on the life of Sterling W. Hannah. Decree for Daisy E. Hardwick. Daisy L. Hannah appeals. Affirmed.

*Anderson, Wilcox, Lacy & Lawson,* for appellant.

*Casper C. Cutler* and *Arthur Rubin,* for appellee.

BOYLES, J. This is a bill of interpleader filed by Chrysler Corporation to determine whether Daisy L. Hannah, appellant, or Daisy E. Hardwick, appellee, is the beneficiary under a group insurance policy on the life of one Sterling W. Hannah. The insured was an employee of the Chrysler Corporation and after his death the above-named parties each claimed to be the beneficiary. The Chrysler Corporation filed a bill of interpleader and paid the money into court. Issue was joined between the above parties, the cause was referred to a circuit court commissioner to take testimony, and the circuit judge on exceptions to the commissioner's report filed an opinion in favor of Daisy E. Hardwick. Decree was entered thereon and Daisy L. appeals.

Sterling W. Hannah was married to Daisy L. (Pennell) of Missouri in 1909. They lived together there until 1921 or 1922 when Sterling W. came to Detroit. Daisy L. claims he left her and went to Detroit to find work. Daisy E. claims he came to Detroit to escape the nagging of Daisy L. From then on until his death in 1939 he lived in Detroit. In 1926 he obtained a decree of divorce from Daisy L. in the circuit court for Wayne county. Neither he nor Daisy L. ever remarried. Daisy L. continued to live in Missouri and to use the name of Daisy L.

(or Lee) Hannah. During his 19 years in Detroit Sterling W. lived in various places. In 1931 he went to live in the rooming house of Daisy E. Hardwick, the appellee herein. From that time until his death he roomed most of the time with Daisy E. Hardwick and was living there at the time of his death. She was a respectable rooming house keeper who took an interest in and frequently befriended her roomers. A strong friendship grew up between Daisy E. and Sterling W.; when he was out of work she provided him with funds or gave him credit for room and board. During the intervals he lived elsewhere he still kept some of his trunks at her place, received a considerable portion of his mail there, and visited her regularly. He had many girl friends; his affections apparently were readily transferable and his earnings were important to him only as a means of providing recreation. He made a few trips back to Missouri, claimed by Daisy E. to be for the purpose of visiting his brothers and other relatives. There is testimony to the effect that on the one occasion when he called upon his former wife, Daisy L., in Missouri, she slammed the door in his face. On the other hand, Daisy L. introduced testimony to show she retained his affection as expressed by him on many occasions and that he kept her picture in his room. As to that, the record shows he had a trunkful of pictures and souvenirs of others. The record is replete with testimony pro and con tending to show Sterling W. might have had either Daisy L. or Daisy E. in mind in naming his beneficiary.

On July 16, 1931, he signed an application for $3,000 group life insurance as a Chrysler employee in which the following designation of beneficiary appears "Name of Beneficiary Daisy—Relationship of Beneficiary Wife." At that time he had no wife. Did he refer to Daisy E. in Detroit or Daisy L. in Missouri? This application is marked cancelled

September 30, 1931, presumably on termination of his employment. On November 6, 1931, he signed a similar application with the same designation "Name of Beneficiary Daisy—Relationship of Beneficiary Wife;" this application is marked cancelled July 31, 1932. On October 31, 1932, he signed another application using the same designation of beneficiary and relationship, which is marked cancelled March 10, 1933. On November 27, 1934, he signed another application this time reading as follows: "Name of Beneficiary Hazel—Relationship of Beneficiary Wife." He had no wife at that time but the record shows he was then devoting his affections to a girl by the name of Hazel. He was not then living at the rooming house of Daisy E. Hardwick. This application is marked cancelled July 14, 1938, at about which time he returned to room with Daisy E. Hardwick and roomed there until his death about a year later. His next application for group insurance with Chrysler was made August 1, 1938. In it again appears the following "Name of Beneficiary Daisy—Relationship of Beneficiary Wife." This application bears no cancellation mark. The record also shows another application made by him on August 10, 1939, with the same designation and relationship of beneficiary as before which is likewise not marked cancelled. However, it bears a notation "Completed on rehire—Old policy in effect." The numerous applications were occasioned by layoffs and resumption of employment. The importance of these applications rests in the fact that the application of the employee is a part of the group insurance contract (3 Comp. Laws 1929, § 12435 [Stat. Ann. § 24.271]); and therefore is of value in determining the beneficiary.

Daisy L. ( of Missouri) relies much on one certificate which was issued by the Chrysler Corporation to Sterling W. Hannah August 1, 1938, when the

last uncancelled application was made. The material part of this certificate reads:

"Chrysler Industrial Association-Employees' Mutual Benefit Division issues this certificate as evidence of life insurance and sickness and accident insurance on the life of Sterling W. Hannah — 84-673 — a member of this Association, for the sum of $3,000 payable in event of death to Daisy Hannah — Wife — BENEFICIARY."

There was only one "Daisy Hannah" at that time, Daisy L. in Missouri having continued to use the name Daisy L. Hannah or Daisy Lee Hannah after divorce. Daisy E. Hardwick claims the certificate merely indicates an assumption on the part of the Chrysler Corporation that "Daisy—Wife" of Sterling W. Hannah would mean "Daisy Hannah." The certificate is no part of the insurance contract. The application by the employer, the group policy issued, and the application of the individual employees constitute the entire contract between the parties (3 Comp. Laws 1929, § 12435 [Stat. Ann. § 24.271]). Insurance contracts are subject to statutory regulations and provisions of the statutes must be read into the contract. *Galkin* v. *Lincoln Mutual Casualty Co.*, 279 Mich. 327. The certificate issued by the employer to the employee is not a part of a group insurance contract and cannot be relied upon as establishing any contractual rights. *Germain* v. *Aetna Life Ins. Co.*, 285 Mich. 318. It may be said that the designation of "Daisy Hannah" as beneficiary in the certificate should be conceded some probative value in favor of Daisy L. It is claimed by Daisy L. that if she was not intended to be his beneficiary, Sterling W. might have corrected the mistake (if it was one) by notifying Chrysler of a change of beneficiary. But the primary objective of

Sterling W. was to have his employer believe him to be a married man. Had he requested that the name of the beneficiary be changed from "Daisy Hannah" to "Daisy E. Hardwick" it would have opened an inquiry by his employer as to whether he was married.

We must determine from the testimony and necessary inferences therefrom whether Sterling W. intended his beneficiary to be Daisy L. his former wife in Missouri or Daisy E. in whose home he was living in Detroit. The designation "wife" is in no way controlling. It is descriptive only and the fact that neither Daisy L. nor Daisy E. was his wife does not prevent one from taking the benefit. *Aetna Life Ins. Co.* v. *Sower*, 273 Mich. 423; *Howard* v. *Chrysler Corporation*, 275 Mich. 706; *Metropolitan Life Ins. Co.* v. *Gray*, 290 Mich. 219; *Chrysler Corporation* v. *Gutt*, 293 Mich. 420; *Alexander* v. *Prudential Ins. Co.*, 293 Mich. 522; and *Ester* v. *Prudential Ins. Co.*, 298 Mich. 330.

As we have indicated, it appears to have been a matter of little concern to Sterling W. as to whether Daisy L. or Daisy E. should be considered his beneficiary. He was chiefly concerned in being considered by his employer as a married man. The testimony of his friend Merlin J. Kelsick comes nearest toward convincing that he had Daisy E. Hardwick in mind when the applications were signed. Mr. Kelsick testified:

"I conversed with Mr. Hannah about getting a job as draftsman with the Lincoln Motor Car Company. It was Saturday, as well as I remember it, before Labor Day in 1938 this conversation took place at 1665 Dickerson avenue in Detroit. Hannah told me with reference to getting a job, to tell them always I was married. It would help me to get the job better and retain it after I had it. I told him,

how was I to do that? I hadn't a wife or anything like that. He said, 'You don't need a wife. Give a girl's name, a friend you know.' I said, 'I don't like to do that.' He said it is did every day. He said in his case he had gave Daisy Hardwick as his wife, as his reference, although she wasn't his wife, and I told him I couldn't give Daisy because she wasn't my wife. Well, he said, 'She's your landlady.' Well, the only thing I remember the man saying to me at that time, was just what I have told you. He told me to give a girl friend whom I liked. He also stated in his beneficiary of his policy, at that time, at 1665 Dickerson avenue, that Daisy was his beneficiary in case he should die and anything should happen. That's what he told me about his group insurance policy. He said he gave the information to put 'Daisy, wife, beneficiary', to Chrysler Corporation. He said he meant as 'Daisy, wife,' beneficiary, Daisy Hardwick, although she wasn't his wife. He told me, 'She is not my wife,' although they did intend to get married. He told me, in his policy that Daisy was the beneficiary who was listed as Daisy. Daisy Hardwick would be his beneficiary. He said he listed her as 'Daisy, wife,' or 'My wife,' something like that.

"*Q.* To whom did he say he gave the information to put 'Daisy, wife, beneficiary'?

"*A.* To Chrysler Corporation.

"*Q.* Whom did he say he meant as 'Daisy, wife,' beneficiary?

"*A.* Daisy Hardwick, although she wasn't his wife. He told me, 'she is not my wife,' although they did intend to get married.

"*Q.* He said, 'She wasn't my wife but I gave Daisy, my wife, as beneficiary, for Daisy Hardwick,' is that true?

"*A.* That's right.   *   *   *

"*Q.* How did he say he listed her?

"*A.* As 'Daisy, wife,' or 'My wife,' something like that.

"*Q.* Did he say he was married to Daisy?
"*A.* They were going to get married.
"*The Court:* Did he tell you that?
"*A.* Yes, sir, he did."

Other testimony shows that Mrs. Hardwick several times answered the telephone as Daisy Hannah when called up from "the shop." The testimony that impelled the circuit judge to find that the evidence preponderated in favor of Daisy E. Hardwick is equally convincing here. It is a fair inference, and we so find, that the testimony sustains the conclusion of the circuit judge. Decree is affirmed, with costs.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.