JONES v PHILIP ATKINS CONSTRUCTION COMPANY

Docket No. 74729. Submitted December 14, 1984, at Lansing.—Decided May 21, 1985. Leave to appeal applied for.

Plaintiffs, James C. Jones and Jan Jones, brought an action for damages against Philip Atkins Construction Company and others as a result of injuries suffered by James Jones while repairing an air conditioner. Philip Atkins Construction Company was the general contractor which had completed construction of the building in which the air conditioner was located. The building had been completed four years prior to Jones's injury. The other defendants were dismissed by summary or accelerated judgments or by stipulation, but Atkins failed to appear and a default judgment was taken against it. A writ of garnishment was forwarded to Atkins's insurer, Home Indemnity Company, and when no disclosure was filed by Home a default judgment was entered on the garnishment, Genesee Circuit Court, Philip C. Elliott, J. Subsequently, Home moved to set aside the default judgment, and filed a disclosure asserting that there was no applicable coverage under the policy issued to Atkins. The circuit court set aside the default judgment and thereafter granted summary judgment in favor of plaintiffs, holding that the insurance policy was ambiguous and should be construed in favor of providing coverage for the

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 269 et seq.

Division of opinion among judges on same court or among other courts or jurisdictions considering same question, as evidence that particular clause of insurance policy is ambiguous. 4 ALR4th 1253.

[2] 43 Am Jur 2d, Insurance §§ 294, 354.

[3] 5 Am Jur 2d, Appeal and Error § 854.

47 Am Jur 2d, Judgments § 1152 et seq.

[4] 46 Am Jur 2d, Judgments § 708 et seq.

Propriety of United States District Court where judgment is registered pursuant to 28 USCS § 1963, granting relief from that judgment under Rule 60(b) of Federal Rules of Civil Procedure. 55 ALR Fed 439.

What constitutes "good cause" allowing federal court to relieve party of his default under Rule 55(c), of Federal Rules of Civil Procedure. 29 ALR Fed 7.

injuries. Home appealed from the summary judgment and Jones cross-appealed from the order setting aside the default judgment against Home. *Held:*

1. The "completed operations" exclusion, appearing on a separate endorsement attached to the policy, applies and precludes coverage for Jones's injuries. The endorsement is not ambiguous, and prevails over the general provisions of the policy.

2. An exception to the "completed operations" exclusion for injuries arising out of the transportation of property does not apply. Jones was injured by an electrical shock, and plaintiffs' allegation that his injury arose in connection with the transportation of property (electricity) is without merit.

3. The trial court did not err in setting aside the default judgment of garnishment. Home presented a reasonable excuse for its failure to comply with the requirements which created the default and established the existence of a meritorious defense.

The summary judgment in favor of plaintiffs is reversed and the case remanded for entry of judgment in favor of Home.

1. INSURANCE — EXCLUSIONS TO INSURANCE POLICY.

Exclusionary clauses in insurance policies are valid as long as they are clear, unambiguous, and not in contravention of public policy.

2. INSURANCE — ENDORSEMENTS TO INSURANCE POLICY.

An endorsement to an insurance policy will prevail over the general provisions of the policy where the language of the two conflict, and the policy will remain in effect as altered by the endorsement.

3. MOTIONS AND ORDERS — DEFAULT JUDGMENT — APPEAL.

A trial court's grant or denial of a motion to set aside a default judgment will be reversed on appeal only if it is a clear abuse of discretion.

4. JUDGMENTS — DEFAULT JUDGMENT — SETTING ASIDE DEFAULT.

Good cause for setting aside a default or default judgment encompasses (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand (GCR 1963, 520.4).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helve-*

*ston & Waldman, P.C.* (by *Kathleen L. Bogas),* for plaintiffs.

*Keil, Henneke, McKone & MacFarlane* (by *Edward G. Henneke),* for garnishee defendant Home Indemnity Company.

Before: J. H. GILLIS, P.J., and M. J. KELLY and K. N. SANBORN,* JJ.

PER CURIAM. Garnishee-defendant Home Indemnity Company appeals as of right from the Genesee County Circuit Court's May 23, 1983, order granting summary judgment in favor of plaintiffs.

On August 14, 1973, James Jones (plaintiff) was injured by an electrical shock while repairing an air conditioner in a Slenderform-Universal Health Spa. Defendant Philip Atkins Construction Company was the general contractor in charge of construction of the building, which was completed in 1969. Atkins was insured under a comprehensive general liability insurance policy issued by Home.

In March, 1974, plaintiff filed a complaint in the Genesee County Circuit Court against Slenderform. Slenderform filed a third-party action against Atkins and several other third-party defendants. The original complaint was dismissed in May, 1976, after Slenderform settled with plaintiff for $95,000. When Slenderform's third-party complaint against Atkins was tendered to Home with a request that the insurer provide a defense under the policy, Home informed Atkins that the policy did not provide coverage for "completed operations", and therefore Home did not have a duty to defend Atkins. This was confirmed by a letter from Home to Atkins dated June 25, 1975. Atkins and

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

its counsel agreed that the policy excluded coverage for "completed operations".

On August 13, 1976, plaintiff filed a second complaint in the Wayne County Circuit Court against Atkins and several other defendants. The case was transferred to Genesee County. Atkins retained counsel to handle the lawsuit and an answer was filed. Plaintiff's second complaint was never tendered to Home for defense, as required by the insurance policy.

Prior to the trial of the second lawsuit most of the defendants were released pursuant to summary and accelerated judgments or stipulated dismissals. Atkins failed to appear at trial and a default judgment was taken against it on June 25, 1981, in the amount of $345,000, plus interest. Plaintiffs then notified Home of the default judgment and stated that Home would be expected to satisfy it. A writ of garnishment was forwarded to Home's main office in New York and was inadvertently diverted from the proper channels. No disclosure was filed by Home and therefore a default judgment was entered on the garnishment action on October 22, 1981.

The default judgment was set aside on Home's motion on March 8, 1982. The same day Home filed a disclosure in the writ of garnishment action, asserting that there was no coverage under the insurance policy issued to Atkins.

Plaintiff moved for summary judgment, claiming that the policy was ambiguous and should therefore be construed against Home to provide coverage for plaintiff's injuries. The trial court granted the motion and final judgment was entered on May 23, 1983. The court reaffirmed its decision following a hearing on Home's motion for reconsideration.

Home appeals as of right from the order grant-

ing summary judgment. Plaintiff has filed a cross-appeal contesting the order setting aside the default judgment against Home.

I

*Does the "Completed Operations" provision of the policy apply to exclude coverage for plaintiff's injuries?*

The comprehensive general liability policy contains the following language:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"Exclusions

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."* (Emphasis added.)

The comprehensive general liability section of the policy contains a schedule which states:

"The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

The schedule then lists five "description[s] of hazards" for which a premium could apply and for which coverage could be afforded. Under Hazard No. 4, "completed operations", the words "not covered" were typed in and no premium was charged. The schedule also indicates that endorsement L9141 is "at issue" regarding the declarations of coverage. Endorsement L9141 is attached to the policy and is an exclusion for the "completed operations hazard and products hazard". It states in part:

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: Comprehensive General Liability Insurance. * * *

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."

The definitions section of the policy defines "completed operations hazard" as follows:

" 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment fur-

nished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

"The completed operations hazard does not include bodily injury or property damage arising out of

"(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, * * *."

The trial judge found the policy ambiguous and therefore construed it to afford coverage. Relying on *Fresard v Michigan Millers Mutual Ins Co,* 97 Mich App 584; 296 NW2d 112 (1980), *aff'd by an equally divided Court,* 414 Mich 686; 327 NW2d 286 (1982), the judge held that the "completed operations" exclusion was general and was subject to the exception to exclusion (a), quoted above and repeated here for convenience:

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

We disagree with the trial court and hold that the completed operations exclusion does exclude coverage for plaintiff's injuries.

Exclusionary clauses in insurance policies are valid so long as they are clear, unambiguous, and not in contravention of public policy. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355; 314 NW2d 440 (1982).

In *Fresard, supra,* the plaintiffs constructed a house and sold it to the Hardings. When construction defects became apparent the Hardings brought suit against the plaintiffs, who were insured under a comprehensive general liability insurance policy issued by the defendant. The defendant undertook the defense of the Hardings' suit under a reservation of rights agreement. The plaintiffs then brought an action for a declaratory judgment that the defendant was obligated under the policy to defend the suit and to pay any judgment rendered against the plaintiffs. The policy in *Fresard* contained an exclusion identical to paragraph (a) in the present case, and also several other exclusions, particularly, paragraph (m) which stated that the insurance did not apply:

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith". 414 Mich 693.

The *Fresard* Court found that exclusion (m) was repugnant to exclusion (a) and that the exception to the exclusion in paragraph (a) was more specific and therefore governed. The Court concluded that the warranty of fitness exception in paragraph (a) applied to grant coverage for damages obtained by the Hardings in their suit based on breach of

warranty. *Fresard* was upheld by an equally divided Michigan Supreme Court.

We find that *Fresard* is inapposite to the instant case. *Fresard* involved an ambiguity created by an apparent conflict between two exclusions found in the same section of the policy. In the present case, the policy clearly indicates that the insured did not purchase coverage for completed operations. The declarations face sheet refers to endorsement L9141 as applying to comprehensive general liability coverage. The endorsement states in clear language that the coverage does not apply to bodily injury included within the completed operations hazard. The completed operations exclusion appears on a separate endorsement attached to the policy. This Court has previously held that endorsements or riders prevail over form provisions of a contract. See *Peterson v Zurich Ins Co*, 57 Mich App 385; 225 NW2d 776 (1975).

A case more on point is *Tiano v Aetna Casualty & Surety Co*, 102 Mich App 177; 301 NW2d 476 (1980). *Tiano* involved a comprehensive general liability policy containing an exclusion identical to paragraph (a) in the present case and also containing an endorsement for completed operations. The same argument which plaintiff raises in the present case was addressed in *Tiano:*

"The plaintiffs argue that in the first paragraph under the 'Comprehensive General Liability Insurance' heading and in exclusion (a) immediately following, quoted earlier in this opinion, the defendant agreed to pay on behalf of the insured any claims with respect to breach of warranties of fitness or quality of the insured's products and breach of warranties that work performed by the insured would be performed in a workmanlike manner. It is claimed that the policy is ambiguous when this exclusion is read in conjunction with the products hazard and completed operations

exclusions and that such ambiguities, under well established Michigan law, must be resolved against the insurer. Similar arguments with respect to virtually identical language have been rejected by courts of other jurisdictions."

The Court then quoted *Roberts v P & J Boat Service, Inc,* 357 F Supp 729 (ED La, 1973):

" 'It is clear from the wording of the endorsement in this case that the intention was to modify the provisions of the policy relating to comprehensive general liability insurance by excluding from the bodily injury liability coverage and property damage liability coverage bodily injury or property damage included within the completed operations hazard and products hazard. The fact that some of the coverage for the completed operations hazard or products hazard is provided for in an exception to an exclusion rather than in the general coverage provisions makes no difference under the wording of this endorsement; so long as the coverage appears in the comprehensive general liability insurance portion of the policy, it is to be excluded by the endorsement. Counsel has suggested no reason, and none suggests itself, why coverage provided by, or saved by, an exception to an exclusion of the policy, should be any more exempt from exclusion by endorsement than are the general coverage provisons themselves. The endorsement had the effect therefore of excluding bodily injury and property damage included within the completed operations hazard or the products hazard regardless of whether coverage for those hazards was provided for by the general coverage provisions of the comprehensive general liability insurance portion of the policy or by an exception to an exclusion from those general coverage provisions.' " 102 Mich App 184-185.

Finally, the Court distinguished *Fresard:*

"While all of the pertinent policy language quoted in *Fresard* is also contained in the policy issued by the defendant here, the present policy contains additional

endorsements specifically excluding completed operations and products hazard coverage which were not present in *Fresard* nor in the cases relied on by the *Fresard* Court in support of its finding of ambiguity. If the language of an endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement. *Peterson v Zurich Ins Co,* 57 Mich App 385; 225 NW2d 776 (1975). See also *Abco Tank [& Manufacturing Co v Federal Ins Co,* 550 SW2d 193 (Mo, 1977)] and *Roberts, supra.* The present case is distinguishable from *Fresard* on the basis of the additional endorsements. We find no ambiguity in the policy." 102 Mich App 185-186.

We conclude that the policy is not ambiguous and that the completed operations provision excludes coverage for plaintiff's injuries.

## II

*Does the exception to the "Completed Operations" exclusion apply to this case?*

The policy definition of "completed operations hazard" contains the following exception:

"The completed operations hazard does not include bodily injury or property damage arising out of

"(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof."

Plaintiff contends that this exception applies because his injury arose in connection with the transportation of electricity. Plaintiff contends that artificially created electricity is property within the meaning of the policy.

Plaintiff in this case was injured while repairing an air conditioner. We believe that the exception

to the completed operations hazard was not intended to apply where the injured party received an electrical shock while repairing an appliance. Although electricity may be considered property in some contexts, we conclude that plaintiff's injury clearly did not arise out of the transporation of property.

Our holding that the completed operations provision applies and excludes coverage makes it unnecessary to consider the remaining issues raised by Home. We will now consider the issue raised in plaintiff's cross-appeal.

### III

*Did the trial court err in setting aside the default judgment entered against Home?*

The setting aside of a default or default judgment is governed by GCR 1963, 520.4:

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 528. * * * *A proceeding to set aside default or a default judgment, except when grounded on want of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed."*

See now MCR 2.603(D) and MCR 2.612.

A trial court's grant or denial of a motion to set aside a default judgment will be reversed on appeal only if it is a clear abuse of discretion. *Borovoy v Bursar Realty Corp,* 86 Mich App 732, 737; 273 NW2d 545 (1978), *lv den* 406 Mich 924 (1979).

The "good cause" requirement for setting aside a default or default judgment is explained in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Comments, p 662:

"Good cause within the meaning of this provision would seem to include (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand."

This description has been quoted with approval by this Court. *Daugherty v State of Michigan (After Remand),* 133 Mich App 593, 598; 350 NW2d 291 (1984); *Midwest Mental Health Clinic, PC v Blue Cross & Blue Shield of Michigan,* 119 Mich App 671, 674; 326 NW2d 599 (1982).

In the present case the trial court set aside the default judgment upon Home's showing that it had a reasonable excuse for failure to comply with the requirements which created the default, as well as the showing of a meritorious defense. The reasonable excuse was demonstrated by the affidavit submitted with the motion to set aside the default judgment against Home, which averred that while plaintiff's attorney was dealing with Home's claim office in Troy, Michigan, the writ of garnishment was served on the insurance commissioner for the State of Michigan and forwarded to Home's office in New Hampshire. The writ was then forwarded to Home's main office in New York, whose employees could not identify what the writ applied to as they had no record of the litigation. By the time Home was able to determine and locate how and where the garnishment arose and forwarded the writ to the Michigan claim office, the default judgment had already been entered. We believe the trial judge did not abuse his discretion in finding that there was a reasonable excuse for failure to comply with the requirements which created the default.

Home also established the existence of a merito-

rious defense, since there was a legitimate question as to whether the insurance policy afforded coverage to Atkins for the injuries received by plaintiff. We conclude that the trial court did not abuse its discretion in setting aside the default judgment.

Reversed and remanded for entry of judgment in favor of garnishee-defendant Home Indemnity Company.