SMART v NEW HAMPSHIRE INSURANCE CO

Docket No. 77324. Argued November 13, 1986 (Calendar No. 13). Decided June 15, 1987.

Ross D. Smart and Viola A. Smart brought an action in the Cheboygan Circuit Court against The New Hampshire Insurance Co. and its agent, seeking to recover the difference between the actual cash value and the replacement cost of property damaged by fire and covered under fire and casualty policies issued by New Hampshire and another insurer. The New Hampshire policy, which commenced on May 1, 1980, provided replacement cost coverage. The other policy, which expired on May 1, 1980, provided coverage for cash value only and for reimbursement of actual cash value. The fire occurred at 7:00 A.M. on May 1. The court, Robert C. Livo, J., entered judgment on a jury verdict for the plaintiffs. The Court of Appeals, Hood, P.J., and MacKenzie and Dunn, JJ., reversed in an opinion per curiam, finding that the New Hampshire policy did not become effective until noon on May 1 (Docket No. 79889). The plaintiffs appeal.

In an opinion by Justice Levin, joined by Justices Brickley, Boyle, and Archer, the Supreme Court held:

The Insurance Code provides that all contracts of fire insurance for real property within the state must conform to the statutory Michigan standard policy which provides that coverage commences at noon, standard time.

Both policies stated on their faces that coverage began at 12:01 A.M., standard time, on May 1, 1980; however, the New Hampshire policy contained a Michigan Amendatory Endorsement providing that coverage began at noon, standard time, on May 1. It does not appear whether the policy of the other insurer contained such a provision.

By virtue of the provisions of the code, coverage under the expiring policy ceased at noon, standard time, on May 1, and by virtue of the provisions of the code and the Michigan Amenda-

REFERENCES

Am Jur 2d, Insurance §§ 475-496.

See the annotations in the Index to Annotations under Fire Insurance.

tory Endorsement, the New Hampshire policy became effective
at noon, standard time, on May 1.

There was no misrepresentation by New Hampshire or its
agent. The record indicates that the plaintiffs were concerned
with obtaining replacement cost coverage and continuous cover-
age. There is no suggestion that the plaintiffs or the agent
focused on the period between 12:01 A.M. and noon on May 1,
when discussing the new coverage.

Justice CAVANAGH, concurring in the result, stated that
where there is a conflict between the language of an endorse-
ment and the form provisions of an insurance contract, the
terms of the endorsement prevail. Thus, as a matter of law, the
insurer did not misrepresent the inception time of its policy.

Affirmed.

Chief Justice RILEY, dissenting, stated that the Insurance
Code must be construed in the light of the legislative intent to
protect policyholders. In this case the policyholders contracted
with the insurer to provide coverage greater than that required
by the Insurance Code, including an endorsement providing
that the policy would be effective at 12:01 A.M. to the extent
that it replaced coverage of another policy terminating at 12:01
A.M. The endorsement is not ambiguous, and the plaintiffs
reasonably could have expected coverage to begin at 12:01 A.M.
Because the defendant's policy replaced a policy which termi-
nated at 12:01 A.M., under the plain terms of the endorsement,
it was in effect at the time of the fire and should be enforced as
written.

Justice GRIFFIN took no part in the decision of this case.

148 Mich App 724; 384 NW2d 772 (1985).

INSURANCE — FIRE AND CASUALTY — MICHIGAN STANDARD POLICY.

All contracts of fire and casualty insurance on real property
within Michigan must conform to the Michigan standard pol-
icy; coverage under the standard policy commences at noon,
standard time (MCL 500.2806, 500.2832; MSA 24.12806,
24.12832).

*Daniel Loznak* for the plaintiffs.

*Peacock & Ingleson, P.C.* (by *Gregory A. Elzinga*
and *Lyle Andrew Peck*), for the defendants.

LEVIN, J. Defendant The New Hampshire Insur-
ance Co., issued, for a period commencing May 1,

1980, a policy of fire insurance covering a motel and other property owned by plaintiffs Ross and Viola Smart. This policy replaced a policy issued by Great American Insurance Company that expired May 1, 1980. There was thus continuous coverage on May 1, 1980, the date on which the fire occurred.

The Great American policy required the insurer to pay the actual cash value of property that was lost. The New Hampshire policy provided that the insurer would pay the replacement cost, a difference found by the jury to be $30,000.

After the Smarts had been paid the actual cash value, $90,000, by Great American, they commenced this action against New Hampshire. The Court of Appeals reversed a $30,000 judgment for the Smarts entered by the circuit court on the jury verdict, finding that the New Hampshire policy did not become effective until noon on May 1, five hours after the fire broke out at 7:00 A.M. on that day. We agree and affirm the judgment of the Court of Appeals.

I

There is a standard form of fire insurance policy in use throughout the United States that is prescribed by statute in Michigan.[1] It appears that the policy period may commence at 12:01 A.M. in some states. In Michigan, the statute prescribes that the policy period begins at "noon, Standard Time"[2] on the date the policy period begins.

Both the Great American and the New Hampshire policies stated, however, on the face of the policy, that the policy began at 12:01 A.M., stan-

[1] MCL 500.2832; MSA 24.12832.
[2] Id.

dard time. The Smarts claim that the New Hampshire policy—providing for replacement cost—thus became effective at 12:01 A.M., seven hours before the loss occurred.

The New Hampshire policy contained a "Michigan Amendatory Endorsement" stating that "[t]he time of inception and the time of expiration of this policy and of any schedule or endorsement attached shall be Noon Standard Time." The policy, as so amended, thus by its terms commenced at noon rather than at 12:01 A.M.

The Michigan Amendatory Endorsement provided further that "[t]o the extent that coverage in this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy, this policy shall be effective at 12:01 A.M. (Standard Time) instead of at Noon Standard Time." The Smarts argue that since the Great American policy stated on its face that it began and expired at 12:01 A.M., the New Hampshire policy, under this language of the Michigan Amendatory Endorsement, became effective at 12:01 A.M., rather than at noon.

It does not appear whether there was language in the Great American policy paralleling the language of the Michigan Amendatory Endorsement to the New Hampshire policy stating that the time of inception and expiration of the policy shall be noon standard time. In all events, the Insurance Code provides that "[a]ll contracts of fire insurance upon property real or personal located in this state shall be held and deemed to be made and consummated within this state";[3] and that "[t]he printed form of a policy of fire insurance, as set forth in § 2832[4] [of the Insurance Code], shall be known as

[3] MCL 500.2804; MSA 24.12804.
[4] MCL 500.2832; MSA 24.12832.

the 'Michigan standard policy;' "[5] and that "[n]o policy or contract of fire insurance shall be made, issued or delivered" by any insurer or agent "unless it shall conform as to all provisions, stipulations, agreements and conditions," of the Michigan standard policy.[6] And, again, the Michigan standard policy provides that it shall be for a term commencing "at noon, Standard Time."[7]

It is well established that "[i]nsurance contracts are subject to statutory regulations and provisions of the statutes must be read into the contract."[8]

In sum, without regard to whether the Great American policy provided by amendatory endorsement that it would commence at noon, by virtue of § 2832 of the Insurance Code the Great American policy expired at noon rather than at 12:01 A.M., and, by virtue of both § 2832 of the Insurance Code and of the Michigan Amendatory Endorsement that was a part of the New Hampshire policy, the New Hampshire policy became effective at noon.[9]

II

The Smarts contend alternatively that New Hampshire represented that its policy began at 12:01 A.M. While the policy did in a number of places state that it became effective at 12:01 A.M., the Michigan Amendatory Endorsement that was a part of the New Hampshire policy stated that the time of inception was noon. Even if the Great

---

[5] MCL 500.2806; MSA 24.12806.

[6] *Id.*

[7] See n 1.

[8] *Chrysler Corp v Hardwick,* 299 Mich 696, 700; 1 NW2d 43 (1941). Similarly, see *Galkin v Lincoln Mutual Casualty Co,* 279 Mich 327; 272 NW 694 (1937); *Wendel v Swanberg,* 384 Mich 468, 478; 185 NW2d 348 (1971).

[9] See *Cambron v North-West Ins Co,* 70 Or App 51; 687 P2d 1132 (1984).

American policy did not contain such an endorsement and, in such event, it would or might not have been clear from an examination of the Great American policy that it expired at noon rather than at 12:01 A.M., New Hampshire made no representation concerning when the Great American policy expired. The Michigan Amendatory Endorsement stated only that if the New Hampshire policy replaced coverage terminating at 12:01 A.M., the New Hampshire policy would become effective at 12:01 A.M. instead of at noon. The Great American policy, for reasons already stated, expired at noon rather than at 12:01 A.M.

The record indicates that the Smarts were interested in obtaining replacement cost coverage in lieu of actual cash value coverage. It is clear that the Smarts expected the new coverage to be effective May 1. While they were concerned that there be continuous coverage, there was no discussion regarding specific hours, 12:01 A.M. or noon.

Since a policy period must, under § 2832, commence at noon, it might have been necessary to begin the New Hampshire policy at noon on April 30 in order to provide coverage by 12:01 A.M. on May 1. There is no suggestion that the Smarts or the insurance agent focused on the twelve-hour period commencing 12:01 A.M., May 1, when they discussed renewal of the existing or alternative coverage. The focus was rather on providing coverage for replacement cost in lieu of actual cash value and continuous coverage.[10]

---

[10] In stating in several places in the policy that the policy period began at 12:01 A.M. and in relying on the Michigan Amendatory Endorsement to amend those statements to make the policy effective at noon, New Hampshire might have failed to comply with the requirements of the Insurance Code.

While the Commissioner of Insurance might disapprove the issuance of a policy in the form in which this policy was issued, absent evidence that the policyholder was misled to his detriment, e.g., by

In sum, we agree with the Court of Appeals that New Hampshire's motions for a directed verdict and judgment notwithstanding the verdict should have been granted. There was no misrepresentation by the insurer or its agent. The expectations of the Smarts were met by providing replacement cost coverage commencing at noon on May 1 when the Great American policy expired.

Affirmed.

Brickley, Boyle, and Archer, JJ., concurred with Levin, J.

Cavanagh, J. (*concurring*). Because this case presents facts unlikely to reoccur and has little jurisprudential significance, I believe leave was improvidently granted. I concur in the result of affirmance for the reasons expressed by the Court of Appeals, in particular:

> At most, plaintiffs showed the existence of a conflict between the terms of the policy and the endorsement. When there is a conflict between the language of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail. *Peterson v Zurich Ins Co,* 57 Mich App 385; 225 NW2d 776 (1975); *Jones v Philip Atkins Construction Co,* 143 Mich App 150; 371 NW2d 508 (1985). Thus, as a matter of law, New Hampshire did not "misrepresent" the inception time of its policy. [148 Mich App 724, 732; 384 NW2d 724 (1985).]

Riley, C.J. (*dissenting*). I cannot agree with the majority that the New Hampshire policy was not

statements in the policy that it began at 12:01 a.m. or by a statement by an agent that it began at 12:01 a.m., this policy of insurance replacing without a gap in coverage existing coverage did not commence before the time stated in the policy as amended by the Michigan Amendatory Endorsement.

in effect at the time of the fire. I would reverse the decision of the Court of Appeals with respect to plaintiffs' breach of contract claim.

The body of the New Hampshire policy made multiple references to the inception time of 12:01 A.M. However, as the majority notes, the Michigan Amendatory Endorsement brought the policy into compliance with Michigan law by stating that "[t]he time of inception and the time of expiration of this policy and of any schedule or endorsement attached shall be Noon Standard Time." However, the endorsement continued "[t]o the extent that coverage in this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy, this policy shall be effective at 12:01 A.M. (Standard Time) instead of at Noon Standard Time." The New Hampshire policy replaced a policy issued by Great American Insurance Company which expired at 12:01 A.M.[1] Thus, under the plain terms of the endorsement, the New Hampshire policy was in effect at the time of the fire because it was replacing a policy terminating at 12:01 A.M.

Several familiar maxims of insurance contract interpretation bear repeating. As noted in *Murphy v Seed-Roberts Agency,* 79 Mich App 1, 7-8; 261 NW2d 198 (1977):

> Policies of insurance are much the same as other contracts; they are matters of agreement by the parties and the job of the courts is to determine what that agreement was and enforce it

[1] While the majority is correct that the Great American policy has not been furnished and, thus, it is not apparent whether that policy contained a Michigan Amendatory Endorsement, defendant never contested the termination time of the Great American policy. In fact, throughout this case, defendant has premised its argument on the basis that the Great American policy did terminate at 12:01 A.M. Therefore, I conclude that defendant waived any argument that the Great American policy terminated other than at 12:01 A.M.

accordingly. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). If the terms of that contract are plain and unambiguous, their plain meaning should be given effect. *Wozniak v John Hancock Mutual Life Ins Co,* 288 Mich 612; 286 NW 99 (1939). An ambiguous policy, however, is open to construction and questions of interpretation may well present jury questions. *Clark v Hacker,* 345 Mich 751; 76 NW2d 806 (1956).

Insurance policies must be interpreted by reading them as a whole. *Sloan v Phoenix of Hartford Ins Co,* 46 Mich App 46; 207 NW2d 434 (1973). Courts should attempt to harmonize all parts of a contract of insurance so as to give effect to each clause contained therein. *Jackson v British America Assurance Co,* 106 Mich 47; 63 NW 899 (1895). Such a reading of the contract as a whole may be necessary to determine whether ambiguity exists in particular clauses. *Ins Co of North America v L C Young Painting & Decorating Co,* 11 Mich App 304; 161 NW2d 24 (1968). *Cf., DeLand v Fidelity Health & Accident Mutual Ins Co,* 325 Mich 9; 37 NW2d 693 (1949).

Further, insurance contracts are in the nature of an adhesion contract, and the court should generally uphold the reasonable expectations of the insured. See *Zurich Ins Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970). See also *Hagerl v Auto Club Group Ins,* 157 Mich App 684; 403 NW2d 197 (1987).

The endorsement is not ambiguous. It clearly provides for coverage if the preceding policy terminated at 12:01 A.M. Further, Mrs. Smart testified that she knew the Great American policy terminated at 12:01 A.M. and that she was interested in continuous coverage. Thus, plaintiffs could have reasonably expected the New Hampshire policy to become effective at 12:01 A.M.

By holding that § 2832 of the Insurance Code

must be read into the contract, the majority renders the second quoted portion of the endorsement nugatory. This is despite the fact that the policy complied with the minimum of Michigan law (an inception time of noon standard time), but also provided the insured an *additional* twelve hours of coverage (12:01 A.M. to 12:01 P.M.) in the event that the New Hampshire policy replaced a policy terminating at 12:01 A.M. While the Insurance Code requires insurers to issue policies in compliance with its provisions, nothing in the code precludes insurers from offering benefits exceeding the statutorily required minimums.

The majority decision contravenes the purpose of the Insurance Code. In *Ford Motor Co v Lumbermens Mutual Casualty,* 413 Mich 22; 319 NW2d 320 (1982), this Court stated that "[t]he extensive regulation of the insurance industry provided for in [the] code indicates a legislative purpose to protect policyholders." *Id.,* 38. The Court then interpreted the statutory policy to comport with this purpose.

The case of *Armstrong v Western Manufacturers' Mutual Ins Co,* 95 Mich 137; 54 NW 637 (1893), is similar to the present case. In *Armstrong,* the defendant had issued a policy which substantially complied with the "Michigan Standard Policy" in effect at the time, but contained a clause not included in the statute. The Insurance Code at the time provided that all policies not in compliance with the act were void. The plaintiff sustained a loss and sued to enforce the contract. The trial court directed a verdict in favor of the defendant, finding that the nonconforming policy was void. This Court reversed that decision.

The Court determined that the statute must be construed in the light of the legislative intent to protect policyholders. To further that legislative

purpose, the Court interpreted the statutory term "void" to mean "voidable."

> In using the word "void" the Legislature certainly did not contemplate that an insurance company might insert a clause not provided for in the standard policy, receive premiums year after year upon it, and, when loss occurs, say to the insured, "Your policy is void, because we inserted a clause in it contrary to the law of Michigan." Such a result would be a reproach upon the Legislature and the law. The law, so construed, instead of operating to protect the insured, would afford the surest means to oppress and defraud them, and thus defeat the very object the Legislature had in view. [*Id.*, 139-140.]

It is true that *Armstrong* is somewhat distinguishable from this case due to the fact that the present Insurance Code does not contain a provision voiding nonconforming policies. However, the rationale of *Armstrong,* that the Insurance Code must be construed to effectuate the legislative purpose, is as valid as if the case had just been decided. See also *DeLand, supra* (statutory cancellation clause not read into contract not containing cancellation provision).

In sum, plaintiffs contracted with New Hampshire to provide coverage greater than that required by statute. "[A] provision more favorable to the insured than the standard policy may be enforceable by the insured." 43 Am Jur 2d, Insurance, § 26, p 104. New Hampshire drafted this contract and is presumed to know its contents as well as the law of this state. New Hampshire accepted premiums on the basis of the contract issued, including the endorsement providing that the policy could become effective at 12:01 A.M. Thus, plaintiffs have paid for coverage under the

contract, which the majority holds New Hampshire could not possibly offer because, as a matter of law, no insurance policy can terminate at 12:01 A.M. Rather than protecting the policyholder, the statute is being used by New Hampshire to shield itself from its contractual obligations.

I would hold the contract enforceable as written, and would reverse the decision of the Court of Appeals.

GRIFFIN, J., took no part in the decision of this case.