SMART v THE NEW HAMPSHIRE INSURANCE COMPANY

Docket No. 79889. Submitted March 7, 1985, at Grand Rapids.—
        Decided September 6, 1985.

Plaintiffs, Ross D. and Viola A. Smart, are the owners of the
        Indian Trail Motel. Mrs. Smart telephoned the Barnich, Kava-
        naugh & Cooper Insurance Agency (BK&C) in April, 1980, and
        spoke to William Kavanaugh about renewing an insurance
        policy on the motel issued by Great American Insurance Com-
        pany. Kavanaugh told her that plaintiffs could receive better
        coverage by purchasing an insurance policy through The New
        Hampshire Insurance Company, since the New Hampshire
        policy provided plaintiffs with replacement cost value for their
        losses whereas the Great American policy paid actual cash
        value. Mrs. Smart told Kavanaugh to purchase the New Hamp-
        shire policy. Mrs. Smart's main concern when she contacted the
        agency was that they continue coverage and that there be no
        period of lapse. Under the Great American policy, insurance on
        the motel began at 12:01 a.m., May 1, 1979, and lapsed at 12:01
        a.m., May 1, 1980. In the main body of the New Hampshire
        policy, the time of inception was listed as 12:01 a.m., May 1,
        1980, and the time of expiration was listed as 12:01 a.m., May
        1, 1981. Attached to the end of the New Hampshire policy was

REFERENCES

Am Jur 2d, Appeal and Error §§ 885-887.
Am Jur 2d, Fraud and Deceit § 12.
Am Jur 2d, Insurance § 294.
Am Jur 2d, Judgments §§ 106 *et seq.*
Am Jur 2d, Summary Judgments §§ 26-27.
Am Jur 2d, Trial §§ 469 *et seq.*
Right to voluntary dismissal of civil action as affected by opponent's
        motion for summary judgment, judgment on the pleadings, or
        directed verdict. 36 ALR3d 1113.
Sufficiency of insurer's compliance with statutory requisites as to
        attaching copy of application to, or making it part of policy. 18
        ALR3d 760.
Dismissal, nonsuit, judgment or direction of verdict on opening
        statement of counsel in civil action. 5 ALR3d 1405.
Appealability of order denying motion for directed verdict or for
        judgment notwithstanding the verdict where movant has been
        granted a new trial. 57 ALR2d 1198.

a sheet entitled "Michigan Amendatory Endorsement", which stated that the time of inception and time of expiration of the policy was to be noon, standard time. It also provided that "[t]o the extent that coverage in this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy, this policy shall be effective at 12:01 A.M. (Standard Time) instead of at Noon Standard Time". There was also a specific provision in the New Hampshire policy which stated that if the terms of the policy were in conflict with the statutes of the state where the policy was written, then the policy and the endorsement were amended to conform to the statutes of that state. At approximately 7 a.m. on May 1, 1980, fire damaged a substantial portion of plaintiffs' motel. Because of the amendatory endorsement attached to the New Hampshire policy, and because of the provisions of a statute mandating that all policies of insurance covering loss due to fire begin and end at noon, standard time, a dispute arose between Great American and New Hampshire as to who was liable for the loss. Great American eventually paid plaintiffs the actual cash value for damage to the motel. This payment was approximately $30,000 less than what plaintiffs would have received had the New Hampshire policy for replacement cost value been honored. Plaintiffs brought an action in the Cheboygan Circuit Court against New Hampshire, BK& C, and Kavanaugh, making numerous allegations including misrepresentation and unfair trade practices. Prior to trial, the trial court granted BK&C's and Kavanaugh's motion for summary judgment but denied summary judgment in favor of New Hampshire. At the close of plaintiffs' proofs, New Hampshire moved for a directed verdict on the ground that plaintiffs had failed to show that any misrepresentation had been made. The court denied the motion, ruling that there was an arguable misrepresentation within the New Hampshire policy because the body of the policy stated the date and time of inception as 12:01 a.m. on May 1, 1980, and the amendatory endorsement stated it as noon on May 1, 1980. The court stated that it was a question of fact for the jury as to whether plaintiffs had relied on the alleged misrepresentation. The jury returned a verdict finding New Hampshire guilty of misrepresentation and unfair trade practices and awarding plaintiffs $30,000 damages. New Hampshire brought motions for a new trial and for judgment notwithstanding the verdict on the grounds that New Hampshire had made no misrepresentation and, even if there was an arguable misrepresentation in the body of the New Hampshire policy, plaintiffs had failed to show any reliance. The court, Robert C. Livo, J., denied both motions and granted judgment

for plaintiffs. New Hampshire appealed and plaintiffs cross-appealed. *Held:*

1. The court erred in refusing to grant New Hampshire's motions for a directed verdict, new trial and judgment notwithstanding the verdict as to plaintiff's claim of misrepresentation. The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury. New Hampshire did not misrepresent the inception time of the policy. Moreover, the testimony at trial showed no reliance.

2. The court erred in refusing to grant New Hampshire's motion for judgment notwithstanding the verdict on plaintiffs' unfair trade practices claim. New Hampshire did not misrepresent the terms of the policy in violation of statute.

3. An endorsement to an insurance policy will prevail over the general provisions of the policy where the language of the two conflict, and the policy will remain in effect as altered by the endorsement. There was no ambiguity as to the inception time and the giving of an instruction on the construction of ambiguous contracts was error.

4. The court correctly granted summary judgment for BK&C and Kavanaugh.

5. The body of the New Hampshire policy which reflects a 12:01 a.m. time of inception is a standard form used throughout the United States and the Michigan Amendatory Endorsement sheet was meant to modify that time of inception in conformance with Michigan law, which requires that insurance policies in Michigan that cover loss from fire begin and end at 12 noon, standard time. By law, the New Hampshire policy could not begin to provide plaintiffs with full replacement value coverage until noon, standard time, on May 1, 1980. By law, the Great American policy did not terminate its coverage of plaintiffs' property at actual cash value until noon on May 1, 1980. It follows that, as a matter of law, New Hampshire could not be held liable for a loss which occurred before noon on May 1, 1980.

Reversed.

1. MOTIONS AND ORDERS — DIRECTED VERDICTS — APPEAL.

The Court of Appeals, in reviewing a trial court's denial of a defendant's motion for a directed verdict, must view the evi-

dence in a light most favorable to the plaintiff and determine whether a prima facie case was established; if there were material issues of fact upon which reasonable minds might differ, they were properly submitted to the jury.

2. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — EVIDENCE.

The grant of a defendant's motion for a judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff; in reaching a decision, the trial court must view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference that could be drawn from the evidence; if, after viewing the evidence in this manner, reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.

3. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

The Court of Appeals will not reverse a trial court's decision to grant or deny a motion for new trial unless the trial court abused its discretion by doing so.

4. FRAUD — ACTIONS.

The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff thereby suffered injury.

5. INSURANCE — ENDORSEMENTS TO INSURANCE POLICY.

An endorsement to an insurance policy will prevail over the general provisions of the policy where the language of the two conflict, and the policy will remain in effect as altered by the endorsement.

6. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

Affidavits, pleadings, depositions, admissions and other documentary evidence must be considered by a court when considering a motion for summary judgment for failure to state a genuine issue of material fact, and the benefit of every reasonable doubt must be given to the party opposing the motion; this motion tests whether factual support exists for the claim made (GCR 1963, 117.2[3]).

7. Motions and Orders — Summary Judgment — Issue of Material Fact — Burden of Proof.

    A party opposing a motion for summary judgment for failure to establish the existence of a genuine issue of material fact bears the burden of coming forward with some proof to establish the existence of a genuine issue of material fact (GCR 1963, 117.2[3]).

*Daniel Loznak,* for plaintiffs.

*Peacock, Ingleson, Vinocur & Brewster, P.C.* (by *Paul M. Brewster),* for The New Hampshire Insurance Company.

Before: Hood, P.J., and MacKenzie and R. D. Dunn,* JJ.

Per Curiam. Defendant The New Hampshire Insurance Company appeals as of right from a jury verdict awarding plaintiffs $30,000 damages for losses sustained as the result of certain misrepresentations contained in the parties' contract of insurance. Plaintiffs cross-appeal. We reverse.

The Smarts are the owners and operators of the Indian Trail Motel in Indian River. Mrs. Smart telephoned the Barnich, Kavanaugh & Cooper Insurance Agency (BK&C) in April, 1980, and spoke to William Kavanaugh about renewing an insurance policy on the motel issued by Great American Insurance Company. Kavanaugh told her plaintiffs could receive better coverage by purchasing an insurance policy through The New Hampshire Insurance Company, since the New Hampshire policy provided plaintiffs with replacement cost value for their losses whereas the Great American policy paid actual cash value. Mrs. Smart told Kavanaugh to purchase the New Hampshire policy. Mrs. Smart testified, and Kavanaugh con-

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

firmed, that her main concern when she contacted the agency was that the insurance provide continuous coverage and that there would be no period of lapse.

Under the Great American policy, insurance on the motel began at 12:01 a.m., May 1, 1979, and lapsed at 12:01 a.m., May 1, 1980. In the main body of the New Hampshire policy, the time of inception was listed as 12:01 a.m., May 1, 1980, and the time of expiration was listed as 12:01 a.m., May 1, 1981. Attached to the end of the New Hampshire policy was a sheet entitled "Michigan Amendatory Endorsement", which stated that the time of inception and time of expiration of the policy was to be noon standard time. It also provided that "[t]o the extent that coverage in this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy, this policy shall be effective at 12:01 A.M. (Standard Time) instead of at Noon Standard Time". There was also a specific provision in the New Hampshire policy which stated. that, if the terms of the policy were in conflict with the statutes of the state where the policy was written, then the policy and the endorsement were amended to conform to the statutes of that state.

At approximately 7 a.m. on May 1, 1980, fire damaged a substantial portion of plaintiffs' motel. Because of the amendatory endorsement attached to the New Hampshire policy, and because of the provisions of MCL 500.2832; MSA 24.12832 mandating that all policies of insurance covering loss due to fire begin and end at noon standard time, a dispute arose between Great American and New Hampshire as to who was liable for the loss. Great American eventually paid plaintiffs the actual cash value for damage to the motel. This payment was approximately $30,000 less than what plain-

tiffs would have received had the New Hampshire policy for replacement cost value been honored.

Plaintiffs commenced suit against New Hampshire, BK&C, and Kavanaugh, making numerous allegations including misrepresentation and unfair trade practices. Prior to trial, the trial court granted BK&C's and Kavanaugh's motion for summary judgment but denied summary judgment in favor of New Hampshire.

At the close of plaintiffs' proofs, New Hampshire moved for a directed verdict on the ground that plaintiffs had failed to show that any misrepresentation had been made. The court denied the motion, ruling that there was an arguable misrepresentation within the New Hampshire policy because the body of the policy stated the date and time of inception as 12:01 a.m. on May 1, 1980, and the amendatory endorsement stated it as noon on May 1, 1980. The court stated that it was a question of fact for the jury as to whether plaintiffs had relied on the alleged misrepresentation.

The jury returned a verdict finding New Hampshire guilty of misrepresentation and unfair trade practices and awarding plaintiffs $30,000 damages. New Hampshire brought motions for a new trial and for judgment notwithstanding the verdict on the grounds that New Hampshire had made no misrepresentation and, even if there was an arguable misrepresentation in the body of the New Hampshire policy, plaintiffs had failed to show any reliance. The court denied both motions.

New Hampshire first claims that the trial court erred in refusing to grant its motions for a directed verdict, new trial, and judgment notwithstanding the verdict as to plaintiffs' misrepresentation claim. We agree.

In reviewing a trial court's denial of a motion for a directed verdict, we must view the evidence

in a light most favorable to the nonmoving party and determine whether a prima facie case was established. If there were material issues of fact upon which reasonable minds could differ, they were properly submitted to the jury. *Hall v Citizens Ins Co of America*, 141 Mich App 676, 682; 368 NW2d 250 (1985). When faced with a motion for judgment notwithstanding the verdict the court must view the evidence in a light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. See *Drummey v Henry*, 115 Mich App 107; 320 NW2d 309 (1982), *lv den* 417 Mich 895 (1983). This Court does not reverse a trial court's decision to deny a motion for new trial unless the trial court abused its discretion by doing so. *Commercial Union Ins Co v Liberty Mutual Ins Co*, 137 Mich App 381, 386; 357 NW2d 861 (1984).

In order to sustain a finding of misrepresentation plaintiffs had to prove each of the six following elements:

"(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Hi-Way Motor Co v International Harvester Co*, 398 Mich 330; 336; 247 NW2d 813 (1976), quoting *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919).

In ruling on the motion for directed verdict, the trial court stated that it found an arguable misrepresentation in the New Hampshire insurance policy because it stated at one point that the time of inception was 12:01 a.m. and in the Michigan Amendatory Endorsement that the time of inception was at noon. This was error. At most, plaintiffs showed the existence of a conflict between the terms of the policy and the endorsement. When there is a conflict between the language of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail. *Peterson v Zurich Ins Co,* 57 Mich App 385; 225 NW2d 776 (1975); *Jones v Philip Atkins Construction Co,* 143 Mich App 150; 371 NW2d 508 (1985). Thus, as a matter of law, New Hampshire did not "misrepresent" the inception time of its policy.

Moreover, in order to prove all of the elements of misrepresentation plaintiffs needed to show that they actually relied to their detriment on the "misrepresentation". Testimony elicited at trial showed that this would have been impossible. Mrs. Smart testified that she never read the New Hampshire insurance policy prior to the fire, that she did not receive a copy prior to the fire, and that she relied completely on what Kavanaugh had told her. She testified that Kavanaugh had told her she had nothing to worry about and that she would receive continuous insurance coverage, but that she had never discussed specific hours and the specific time of inception with him. Thus, Mrs. Smart's own admissions showed that it was impossible for plaintiffs to place any reliance on the actual body of the New Hampshire insurance policy. Without such proof, a finding of misrepresentation cannot be sustained. Accordingly, we reverse the trial court's denial of New Hampshire's

motions for a directed verdict, new trial, and judgment notwithstanding the verdict on plaintiffs' misrepresentation claim.

New Hampshire next contends that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict on plaintiffs' unfair trade practices claim.

Michigan prohibits unfair or deceptive acts or practices in the business of insurance in the following statutes:

"(1) A person shall not engage in a trade practice which is defined in this uniform trade practices act or is determined pursuant to this act to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." MCL 500.2003; MSA 24.12003.

"An unfair method of competition and an unfair or deceptive act or practice in the business of insurance means the making, issuing, circulating, or causing to be made, issued, or circulated, an estimate, illustration, circular, statement, sales presentation, or comparison which by omission of a material fact or incorrect statement of a material fact:

"(a) Misrepresents the terms, benefits, advantages, or conditions of an insurance policy." MCL 500.2005; MSA 24.12005.

Plaintiffs alleged that New Hampshire violated the above provisions because it unfairly misrepresented the terms of the insurance policy. In order to find a violation of this act, the plaintiffs needed to prove the element of misrepresentation and then link it to the specific terms of the insurance policy. However, as noted above, at the close of proofs, it had been shown that plaintiffs could not possibly have relied on the written word in the New Hampshire insurance policy because they had never received a copy of it, nor read it, prior to the loss. Plaintiffs thus failed to prove an essential

element of misrepresentation and, therefore, also failed to show that New Hampshire violated the unfair trade practices act. We reverse the trial court's denial of New Hampshire's motion for judgment notwithstanding the verdict on plaintiffs' unfair trade practices claim.

In its charge to the jury the trial court instructed on construing an ambiguity found in an insurance policy as follows:

"I instruct you that the general rule is that when there is ambiguity in an insurance policy, the policy should be construed against the insurance company and in favor of the insured party."

New Hampshire objected to the giving of this instruction. On appeal, New Hampshire contends that it was inapplicable. The trial court apparently believed that the policy was ambiguous because the time of inception of coverage listed in the body of the policy was 12:01 a.m., whereas the time listed in the endorsement was noon. We disagree. As previously noted, endorsements or riders prevail over form provisons of a contract. *Peterson, supra; Jones, supra.* Therefore the language of the endorsement controls. By endorsement the contract said coverage would begin at noon on May 1, 1980. The contract said that Michigan law would apply to both the body of the policy and the endorsement and that the terms required by Michigan law would supersede any terms to the contrary. There is no ambiguity. The instruction was inapplicable on the facts of this case.

In their cross-appeal, plaintiffs claim that the trial court erred in granting summary judgment in favor of defendants BK&C and William Kavanaugh. A motion for summary judgment brought pursuant to GCR 1963, 117.2(3) is designed to test

whether there is factual support for a claim. In ruling on this motion, a trial court must consider not only the pleadings but also whatever depositions, briefs, and other documentary evidence is then available. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). The party opposing such a motion for summary judgment must come forward to establish the existence of a genuine issue of material fact. If the nonmoving party fails to establish a material fact, then the motion is properly granted. *Bob v Holmes,* 78 Mich App 205; 259 NW2d 427 (1977).

In the instant case, there was no evidence of any misrepresentations on the part of BK&C or Kavanaugh. By plaintiffs' own admissions, BK&C and Kavanaugh made no misrepresentation to them because there was never any conversation regarding the time of inception of the New Hampshire policy.

There was also no evidence of any breach of duty or negligence on the part of BK&C or Kavanaugh. BK&C and Kavanaugh did nothing to deprive plaintiffs of their continual insurance coverage. By operation of law, MCL 500.2832; MSA 24.12832, the Great American insurance policy extended to noon on May 1, 1980. At noon May 1, 1980, the New Hampshire insurance policy commenced. The fact that the fire occurred at 7 a.m., May 1, 1980, before the New Hampshire replacement cost coverage went into effect, is no fault of BK&C's or Kavanaugh's. Plaintiffs wanted continual insurance coverage, and they received continual insurance coverage. Nor was there evidence to show that BK&C or Kavanaugh was an agent of New Hampshire and therefore guilty of New Hampshire's alleged "misrepresentations" because of an agency relationship. The evidence showed that BK&C is an independent insurance agency

and represents the interest of the insureds before it represents the interests of any insurance companies. The trial court correctly granted the motion for summary judgment on all counts involving BK &C and Kavanaugh.

Plaintiffs' second claim of error on cross-appeal is that New Hampshire should be found liable according to. the declaration page of the policy rather than according to the endorsement to the policy stating coverage began at 12 p.m. on May 1, 1980. This contention is without merit. The body of the New Hampshire policy which reflects a 12:01 a.m. time of inception is a standard form used throughout the United States and the Michigan Amendatory Endorsement sheet is meant to modify that time of inception in conformance with Michigan law. MCL 500.2832; MSA 24.12832 requires that insurance policies in Michigan that cover loss from fire begin and end at 12 noon standard time. By law, the New Hampshire policy could not begin to provide plaintiffs with full replacement value coverage until noon standard time on May 1, 1980. By law, the Great American policy did not terminate its coverage of plaintiffs' property at actual cash value until noon on May 1, 1980. It follows that, as a matter of law, New Hampshire could not be held liable for a loss which occurred before noon on May 1, 1980.

Reversed.