985 F.2d 561
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leo POPULIS, by Michelle POPULIS, Conservator of His Estate,
Plaintiff-Appellee,
v.
UNION UNDERWEAR COMPANY, INC., a foreign corporation,
Defendant-Appellant.
 No. 92-1202.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1993.
 
 Before RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Union Underwear Company, Inc., appeals the denial of its motions for new trial or judgment notwithstanding the verdict (j.n.o.v.) in this products liability action originally filed on May 2, 1990, in the district court. Plaintiff, Leo Populis, alleged that injuries suffered when his undershirt caught fire accidently were caused by defendant's negligence and breaches of express and implied warranty. Following a jury trial, a general verdict in favor of plaintiff was returned on November 6, 1991. Plaintiff was awarded $2,500,000 in damages. Defendant's motions for a new trial or j.n.o.v. were denied by the trial judge after a hearing held on January 16, 1992. For the reasons that follow, we reverse and remand for a new trial.
 
 I.
 
 2
 Plaintiff, Leo Populis, was three years old at the time of the accident on December 23, 1981. The child was dressed that evening in a pair of jeans, a button-down flannel shirt, and an undershirt. The outer flannel shirt was 100 percent cotton and was not manufactured or sold by defendant Union Underwear Company, Inc. The "Underoos" undershirt, which had been manufactured by defendant, was 50 percent cotton and 50 percent polyester, with a decal on the front depicting characters from a television show, "The Dukes of Hazzard." Plaintiff's grandfather, Leo Carroll, had been babysitting the child and fell asleep. Carroll awoke to find the child screaming and both of his shirts, the outer flannel shirt and the undershirt, burning. Although there were no witnesses to the accident, Carroll theorized that plaintiff had obtained a cigarette lighter from his pocket while he was sleeping and that the child's clothes caught on fire when he was playing with the lighter. Carroll was able to rapidly tear the outer flannel shirt off of the child. He also removed the undershirt in a matter of seconds. However, much of the part of the undershirt containing the decal remained attached to plaintiff's torso until it was removed at a hospital emergency room. As a result of the accident, the child suffered extensive third-degree burns on his face, neck, shoulders, and torso.
 
 II.
 
 3
 Union Underwear contends that it incurred substantial prejudice in the district court's submission to the jury of plaintiff's breach of express warranty claim. The company argues that such a claim was not supported by the proofs and that a verdict on the claim should have been directed in its favor.
 
 
 4
 Plaintiff supported his breach of express warranty claim by offering the testimony of Kitty Carroll, Leo's grandmother and the purchaser of the Underoos undershirt. Carroll testified that she studied potential clothing purchases to assure herself that any product she bought for Leo "wouldn't burn." (App. 127). She stated that the package in which the undershirt manufactured by defendant was contained provided specifically that the garment met "U.S. standards" and was "flame retardant" (App. 128). She testified that she relied on this information in making her purchase. Leo's mother, Michelle Populis, also testified that the Underoos package carried a warning that the garment was flame retardant. (App. 137). Additionally, plaintiff presented evidence that numerous manufacturers were producing flame retardant clothing items at the time of Kitty Carroll's purchase.
 
 
 5
 Carroll testified that the package containing the undershirt had
 
 
 6
 [l]ittle cardboard backing, like they--piece of cardboard down inside, and put the outfit on it, and cellophane over it with a picture on the front of it and writing material, and it was flame retardant and so on.
 
 
 7
 (App. 128). She stated that the writing on the package:
 
 
 8
 was printed on the paper ... printed on the cellophane and writing also on the back of the cardboard.
 
 
 9
 (App. 128). Plaintiff was unable to produce the package at trial. Defendant offered uncontroverted evidence by way of the testimony of Joseph Medalie, a vice-chairman of Union Underwear, that Underoos were never packaged with cellophane and a cardboard backing. (App. 141). The defense also introduced an exhibit which it contended was the original packaging of Underoos in the form as distributed by Union Underwear. Under cross-examination, Kitty Carroll admitted that the package she purchased did not resemble that distributed by defendant:
 
 
 10
 A. [Carroll] That [exhibit] don't look like the same package.
 
 
 11
 Q. [Counsel] You don't recall that being the same package?
 
 
 12
 A. I said it don't look like it. It had like the cardboard on the front--no cardboard on the front. It had just like cellophane.
 
 
 13
 Q. Take a look at the back of it and see if that's anything you recall seeing at the time?
 
 
 14
 A. That--I don't think that's the same package.
 
 
 15
 Q. Why not?
 
 
 16
 A. Because the one that--the original ones had writing on the front of it, and it stated that it met U.S. standards and it was flame retardant.
 
 
 17
 (App. 135). Likewise, Michelle Populis stated on cross-examination that defendant's exhibit was not similar to the package in which Leo's undershirt was sold to Kitty Carroll:
 
 
 18
 A. [Populis] I seen the one [package] you handed my mother and that doesn't--I don't remember that package either. The one I remember was that shape, except that it had the T-shirt and everything slid down inside of a little square cardboard piece, and the picture had cellophane wrapped all around it, and the picture of the T-shirt was on the front, and on the corner of the cellophane it said it met standards of being flame retardant.
 
 
 19
 (App. 138).
 
 
 20
 Michigan Standard Jury Instructions Civil 2d § 25.11 (Express Warranty--Definition), which was employed by the district court in this diversity action, defines express warranty as
 
 
 21
 a representation or statement, made in writing, orally or by other means, by a manufacturer, that his or her product has certain characteristics or will meet certain standards.
 
 
 22
 See also Mich.Comp.Laws Ann. § 440.2313. We are convinced that plaintiff failed to provide sufficient evidence that Union Underwear, as part of its packaging of Underoos, specifically represented that the garment was flame retardant. Both of plaintiff's textile and chemical expert witnesses testified that in 1980 and 1981 there was no children's underwear on the market which was flame retardant. (App. 201, 237-38). Plaintiff presented no evidence to rebut Medalie's assertion that Union Underwear never packaged Underoos in the manner recalled by Kitty Carroll and Michelle Populis. There is nothing in the record to indicate that plaintiff cast doubt upon the authenticity of the packaging Union Underwear offered as the original packaging of Underoos.
 
 
 23
 In light of such evidence, the particular testimony of Kitty Carroll and Michelle Populis becomes critical in considering whether a verdict should have been directed in defendant's favor. Carroll and Populis expressly stated that defendant's exhibit was not the same type of packaging in which the Underoos that Carroll purchased were contained. As a result, the testimony of Kitty Carroll and Michelle Populis does not establish that Union Underwear warranted that Underoos were flame retardant. At most, if believed, their testimony indicates that some more proximate seller made such a warranty.
 
 
 24
 Under Michigan law, in deciding whether to direct a verdict for the defendant, the trial court must consider all the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all legitimate favorable inferences. See e.g., Pettis v. Nalco Chem. Co., 150 Mich.App. 294, 388 N.W.2d 343 (1986); Smart v. New Hampshire Ins. Co., 148 Mich.App. 724, 384 N.W.2d 772 (1986). If evidence was offered upon which reasonable minds could differ, the motion should be denied. See e.g., Matras v. Amoco Oil Co., 424 Mich. 675, 385 N.W.2d 586 (1986); Young v. City of Ann Arbor, 147 Mich.App. 333, 382 N.W.2d 785 (1986). Based on the evidence adduced at trial, we conclude that no reasonable juror could find that an express warranty of flame retardancy was made by Union Underwear. If in fact such a warranty was made, the uncontroverted evidence indicates that it was made by some other entity that repackaged the Underoos. As a result, we direct a verdict in defendant's favor as to the express warranty claim.
 
 
 25
 In Michigan, when one of the claims submitted to the jury on a general verdict form was erroneously submitted, and it is impossible to tell whether the verdict rested on the erroneous claim, the reviewing court is to reverse and remand for a new trial. Miracle Boot v. Plastray, 84 Mich.App. 118, 269 N.W.2d 496 (1978); Funk v. General Motors Corp., 392 Mich. 91, 220 N.W.2d 641 (1974). In the instant case, the jury returned a general verdict and we cannot discern whether it rested its decision in whole or in part on the breach of express warranty claim. The verdict form is particularly unrevealing because it did not adequately account for all of the theories that plaintiff pursued at trial and upon which the jury was instructed. Plaintiff advanced claims of negligent design, breach of implied warranty, and breach of express warranty. However, Question No. 1 on the verdict form read: "Was the defendant negligent in one or more of the ways claimed by the Plaintiff?" No express reference to breach of warranty was included in the form. Although the implication was most likely that the term "negligence" was to encompass all of plaintiff's theories, such language may have been confusing to the jury. Accordingly we reverse and remand for a new trial.
 
 
 26
 Defendant raises other allegations of error in seeking either a j.n.o.v. or a new trial. In light of our conclusion, we need not address these additional arguments.
 
 
 27
 REVERSED and REMANDED for a new trial.